OVERTON, J.
 

 This is a suit to recover $5,4S6.20, retained by defendant, pursuant to the terms of certain contracts, entered into by it with plaintiff for the construction of subsurface drains, gutters, curbings, and ■sidewalks on sections of three streets in the city of New Orleans. The amount, sued for, was retained out of the contract price, due under each contract, for the work done, and is held, under the terms of the contracts, to guarantee plaintiff’s obligation, for a period of two years, to maintain in good repair the work done in accordance with the maintenance provision of the contracts and specifications.
 

 ■ The period, during which the amount was to be held as a guaranty has expired, but defendant refuses to pay plaintiff the amount retained, because of the alleged defective condition of some of the work done, which defendant alleges plaintiff refuses to remedy. Defendant has reconvened for $7,617.90, the estimated cost of repairing the defective work.
 

 After trial had, there was judgment in fa-: vor of plaintiff for $4,792.90, with legal interest on the amounts going to make up the sum allowed from various dates until paid, and dismissing defendant’s reconventional demand.
 

 The reason why the trial court did not render judgment in favor of plaintiff, for the full amount prayed for, is because plaintiff admitted on the trial of the case that there were certain defects in the work, which it had failed to remedy during the maintenance period, which, under its guaranty, it should correct. The trial court, instead of allowing the cost of making those repairs in reconvention, deducted the cost thereof from the amount sued for by plaintiff. Plaintiff does not complain of this deduction.
 

 Plaintiff alleges in its petition, and defendant admits the truth of the allegation, that it did the work, called for by the contracts, in accordance with the plans and specifications, and defendant, at the opening of its argument, makes the same admission, in its brief, by saying that there is no issue, and that it has made no contention, that plaintiff is liable because of any defects due to workmanship or to material used.
 

 The sole question at issue is whether plaintiff is liable, under the maintenance clause of the contracts, to repair defects in the work, executed by it, which have arisen during the period of maintenance, and which are due to subsidence of the foundation, and not to defects in the material used, or to inferior workmanship. ■ • ■ ....
 

 
 *855
 
 The solution of the issue, presented, therefore involves an interpretation of the maintenance clause and of such clauses in the specifications, which are made part of the contracts, as bear upon the question before us.
 

 Under the title of “Familiarity with Plans and Proposed Work,” the specifications contain a provision, reading as follows, to wit: “The bidder should personally examine carefully the site of, and the proposal, plans, specifications, and contract form for the proposed work, and the city engineer will assume that he has satisfied himself as far as it is practicable to do so, both by personal investigation and inquiry from informed sources, as to the conditions to be encountered, as to the character, quality and quantities of work .to be performed and materials to be furnished and as to the requirements of these specifications and contract. No additional compensation will -be granted because of any unusual difficulties which may be encountered in the execution, or maintenance of any part of the work.”
 

 Under the title of “Maintenance,” the specifications, which form part of the contracts involved herein, contain a provision, which reads: “The contractor, at his expense, shall maintain in good order and condition, all the work included in his contract and executed by him, in addition to all extra work that may have been ordered by the'city engineer to the satisfaction of the commissioner of public property, from the date of acceptance of the same by the city engineer and the said commissioner, for such period of time as is hereinafter prescribed for each kind and character of work, or as may be otherwise stipulated in the proposal form furnished by the city engineer.”
 

 Under the title of “Maintenance Requirements,” the specifications read as follows, to wit: “During the maintenance period and before final acceptance the contractor ‘ shall promptly and properly repair any defects in the work executed by him under his contract. Cracks in the wearing surface more than three (3) feet in length, or cracks or other defects which indicate disintegration of the wearing surface, and all irregularities of the surface and places where the material is defective or improperly laid shall be promptly and properly repaired. Any surface irregularities which are due to defects in the foundation shall be taken up and a new foundation and wearing surface provided for such areas. None but new material of the same quality as the original material shall be used in making repairs, and all work shall be executed in accordance with the specifications governing the original work.”
 

 Each of the three contracts entered into between plaintiff and defendant contains two principal obligations, due by the former to the latter. The first of these is the obligation to perform the work strictly in accord-anee with the plans and specifications found in the contracts to which the plans and specifications are attached. It is conceded that plaintiff discharged that obligation. The second is the obligation, found in the specifications under the title of “Maintenance,” to the effect that: “The contractor, at his expense, shall maintain in good order and condition, all the work included in his contract and executed by him, in addition to all extra work that may have been ordered by the city engineer to the satisfaction of the commissioner of public property” for the period prescribed by the contracts, which was two years, dating from the acceptance of the work. This provision is broader than a mere guaranty to remedy defects, resulting from inferior workmanship or the use of defective
 
 *857
 
 material, appearing within the two year period. It goes beyond this and includes the obligation to maintain the work in good repair for the required period, whether or not the repairs are required because of defects in the workmanship or because of the use of inferior material. This provision, however, does not stand alone, and must therefore be interpreted in connection with other provisions bearing on the subject.
 

 So interpreting that provision, we fail to find that the remaining provisions modify it so as to confine it to defects arising from improper workmanship or the use of defective material. The first sentence in the provision, quoted above, relative to “Maintenance Requirements,” reading that, “During the maintenance period and before final acceptance, the contractor shall promptly and properly repair any defects in the work executed by him,” does not so restrict the obligation, under the title of “Maintenance,” as to confine it to defects arising from improper workmanship or the use of defective material. The defects referred to in that sentence are defects arising whether because there was a failure to comply properly with the specifications or not. The next sentence in the provision, quoted above, relating to “Maintenance Requirements,” reading that, “Cracks in the wearing surface more than three (3) feet in length, or cracks or other defects which indicate disintegration of the wearing surface, and all irregularities of the surface and places where the material is defective or improperly laid shall be promptly and properly repaired,” does not modify the provision, under the title of “Maintenance,” to maintain the work in good order, so as to confine that provision to the correction of defects, arising because-of a failure to comply properly with the plans and specifications, for it is not only cracks or other defects, indicating disintegration of the wearing surface, and all irregularities of the surface, where the material is defective, or improperly laid, that shall be promptly repaired, but cracks in the wearing surface more than three feet in .length, without reference to the cause for their appearance. The next sentence, in the provision concerning “Maintenance Requirements,” reading, “That any surface irregularities which are due to defects in the foundation shall be taken up and a new foundation and wearing surface provided for such areas,” does not confine the obligation contained in the provision, under the title of “Maintenance,” to defects in the foundation due to improper workmanship or the use of improper material. This sentence is sufficient to include defects in the foundation, arising from other causes, such as defects in the subsoil. Nor does the remaining sentence, in the provision concerning “Maintenance Requirements,” relative to the manner of making repairs, so confine the provision, under the title of “Maintenance.”
 

 All of the foregoing provisions interpreted in connection with the clause, under the title of “Maintenance,” relative to keeping the work in good repair during the maintenance period, contemplate that it shall be kept in good repair, during that period, at the expense of the contractor, whether the repairs should be occasioned by a failure to comply strictly with the specifications or not. There was a reason for so providing. The defendant had learned from experience that it could not always tell whether defects in work of this description, appearing within a given period, were due to a failure to comply strictly with the specifications or not. The soil within defendant’s boundaries contains a large amount of moisture, and the laying of underground drainage, as an incident to paving, as was the case here, relieves the soil
 
 *859
 
 of a "large-part of the moisture, and causes ■subsidence in places, which defendant cannot wholly guard against in any practical manner.
 

 To avoid the difficulties arising, defendant has, by the foregoing provisions, provided, as an incident to obtaining proper pavement or other similar work, that the contractor shall repair any defects in the work, arising during the maintenance period, at least under ordinary usage, whether or not the defects are due to a failure to comply strictly with the specifications or
 
 to other
 
 cause.
 

 Plaintiff is charged with knowledge that there was danger of subsidence occurring in the work at places, for thé specifications made it plaintiff’s duty, before bidding, to investigate the conditions to be encountered, and the fact that there was danger of subsidence was a condition easily ascertainable. Presumably, plaintiff took into consideration this particular danger, to be encountered and based its bid accordingly. We think that it is plaintiff’s duty to correct the defects.
 

 Both parties to this litigation have cited numerous authorities in support of their respective positions. The rulings in the eases cited, however, depend largely upon the particular provisions in the maintenance or guaranty clauses, there involved, which scarcely, in any two instances, are sufficiently similar to make the cases very pertinent. We, however, think that the following cases have a direct tendency to support the conclusion reached by us. Cameron-Hawn Realty Co. v. City of Albany, 207 N. Y. 377, 101 N. E. 162, 49 L. R. A. (N. S.) 922; Barber Asphalt Paving Co. v. City of Louisville, 123 Ky. 687, 97 S. W. 31, 9 L. R. A. (N. S.) 154; Barber Asphalt Paving Co. v. City of St. Paul (C. C. A.) 224 F. 842, certiorari denied 239 U. S. 644, 36 S. Ct. 166, 60 L. Ed. 483; Riley v. Brooklyn, 46 N. Y. 444. Apparently, the only Louisiana case, touching such guar anties, is that of Barber Asphalt Paving Co. v. Watt, 51 La. Ann. 1345, 1352, 26 So. 70, cited by plaintiff. However, the specifications in that case, when considered in connection with the maintenance clause therein, make the case so unlike the present one that it hardly may be considered as precedent herein. We have considered the remaining cases cited by plaintiff, but do not consider them pertinent, due to the facts peculiar to them, or else persuasive.
 

 While defendant has prayed for a judgment in reconvention against plaintiff for. a sum equivalent to the amount thought necessary by it to make the repairs, yet the record leaves the amount uncertain, and unsatisfactory, as a basis for judgment, in that it seems to be what may be styled a “rough estimate.” However, at the commencement of the trial, the following agreement was entered into between counsel, to wit: “It is understood that if the court should hold that the plaintiff in this case should make any of the repairs, because of the present defective condition of the work, under the contracts sued on in this case, that they will be permitted to make the repairs under the supervision of the city and that no money judgment will be rendered against them in these proceedings, that a sufficient amount will be retained by the city under the maintenance department (should be clause) to cover the cost of such work as the court may hold the plaintiffs liable to repair, and that the plaintiffs will repair it.”
 

 These .defects, including those which plaintiff concedes it is liable for, are set out in detail, together with the estimated cost of repairing them, in the three exhibits, marked
 
 *861
 
 Exhibits Nos. 1, 2, and. 3, found at the close of the volume of exhibits, brought up as part of the record herein.
 

 In view of the foregoing agreement, to which our attention has been specially called by defendant in its brief, we shall render judgment accordingly, and shall recognize defendant’s right to retain the respective items, making said sum of $5,476.20, held by it to secure the accomplishment of the maintenance clause, until the performance of the work to be done thereunder, and render such other decrees as are necessary to protect both parties.
 

 ' For the reasons assigned, the judgment appealed from is set aside; plaintiff’s demand is dismissed; judgment is rendered in re-convention against plaintiff, ordering plaintiff to repair at once, under , the supervision of defendant, the defects set out in detail in said exhibits, marked Exhibits Nos. 1, 2, and 3, contained in the volume of exhibits filed herein; recognizing defendant’s right to retain the sum of $1,991.33, to secure, under the maintenance clause, the making of said repairs on Valence street; to retain the sum of $591.07, to secure the making of said repairs on South Johnson street; to retain the sum of $2,893.80, to secure the making of said repair's on Marengo street; said three items aggregating the aforesaid sum of $5,-476.20, held by defendant as security, under said contracts; ordering defendant to pay to plaintiff, upon the completion of the repairs upon the streets for which it is held, said sum retained as security therefor as aforesaid, with 5 per cent, per annum interest thereon from that date until paid; recognizing defendant’s right to use each of said sums, or so much thereof as may be necessary, to make said repairs on the street for which it is held, in the event plaintiff should fail to make the repairs thereon; ordering defendant to pay the balance, if any, to defendant, with 5 per cent, yearly interest thereon, from the date of defendant’s completion of the repairs thereon; and, in the event the repairs should exceed the amount retained to secure the making of the repairs thereon, reserving to defendant the right to sue plaintiff for the balance. It is further ordered that plaintiff pay the costs of this suit in both courts.